UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Stefano D'Angola**

    **v.**                                        Case No. 11-cv-87-PB
                                                   Opinion No. 2011 DNH 185

**Upstate Management Services LLC,**
**Michael A. Benson**


**MEMORANDUM AND ORDER**

Stefano D'Angola brings suit under 15 U.S.C. 1692, alleging
that defendants Upstate Management Services ("Upstate") and
Upstate's attorney, Michael Benson, engaged in debt collection
activities in violation of the Fair Debt Collection Practices
Act ("FDCPA") and various state laws.  Benson moves to dismiss,
contending that D'Angola's complaint against Benson fails to
state a claim upon which relief may be granted.  For the reasons
provided below, I deny Benson's motion.


**I.  BACKGROUND**

In February 2008, D'Angola filed suit against Upstate,
alleging both federal and state law causes of action arising out
of Upstate's attempts to collect a debt that D'Angola owed on a
Chase Bank credit card account.  D'Angola alleges that several
days after he mailed the waiver of service to Upstate's

registered agent, he received a telephone call from Benson.
Benson stated that he was representing Upstate and that he had
received the complaint and the waiver of service.  Benson told
D'Angola not to bother proceeding with the case against Upstate
because Benson was "shutting Upstate's offices down."  Compl.,
Doc. No. 3, ¶ 22.  He then asked D'Angola how he was going to
pay his outstanding debt, and added, "You know what we debt
collectors call you?  A pro.  You're a professional at not
paying your bills and then filing these types of lawsuits."  Id.
When D'Angola informed Benson that he had no intention of paying
off the debt because it was past the statute of limitations in
New Hampshire, Benson responded that he could file suit against
D'Angola in Connecticut.  Benson then "raised his voice, used
profanities, and again asked [D'Angola] how he was going to make
payment on the outstanding debt."  Id. ¶ 23.  When D'Angola
asked Benson if he would discuss settling the case against
Upstate, Benson responded, "NO, I'm closing Upstate down so
don't even waste your time!  I'll be calling you back to discuss
your debt!"  Id.  Benson then hung up the phone.

      In response to Benson's single phone call, D'Angola filed
an amended complaint in April 2008, naming both Upstate and

2

Benson as defendants.  On September 7, 2011, D'Angola notified
the court that he and Upstate had reached a settlement, and that
he would file a motion to dismiss his claims against Upstate
once all the terms of the agreement have been met.

## II.  <u>STANDARD OF REVIEW</u>

To survive a motion to dismiss under Rule 12(b)(6),
plaintiff must make factual allegations sufficient to state a
claim to relief that is plausible on its face.  <u>See</u> <u>Ashcroft v.
Iqbal</u>, 129 S. Ct. 1937, 1949 (2009).  A claim is facially
plausible when it pleads "factual content that allows the court
to draw the reasonable inference that the defendant is liable
for the misconduct alleged.  The plausibility standard is not
akin to a 'probability requirement,' but it asks for more than a
sheer possibility that a defendant has acted unlawfully."  <u>Id.</u>
(citations omitted).

In deciding a motion to dismiss, I must employ a two-
pronged approach.  <u>See</u> Ocasio-Hernández v. Fortuño-Burset, 640
F.3d 1, 12 (1st Cir. 2011).  First, I must screen the complaint
for statements that "merely offer legal conclusions couched as
fact or threadbare recitals of the elements of a cause of

action." Id. (citations, internal quotation marks, and alterations omitted).  A claim consisting of little more than "allegations that merely parrot the elements of the cause of action" may be dismissed.  Id.  Second, I must credit as true all non-conclusory factual allegations and the reasonable inferences drawn from those allegations, and then determine if the claim is plausible.  Id.  The plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).  The "make-or-break standard" is that those allegations and inferences, taken as true, "must state a plausible, not a merely conceivable, case for relief."  Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010); see Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . ." (citation omitted)).

### III.  ANALYSIS

Pursuant to Rule 12(b)(6), Benson moves to dismiss all claims brought against him.  Benson contends that D'Angola has not sufficiently alleged that Benson qualifies as a debt

4

collector under the FDCPA and that D'Angola cannot establish any claim against Benson under New Hampshire law.

The FDCPA was "enacted to protect debtors from abusive debt collection practices." Chiang v. Verizon New Eng. Inc., 595 F.3d 26, 41 (1st Cir. 2010) (citing 15 U.S.C. § 1692(e)).  To prevail on a claim under the FDCPA, plaintiff must establish that: "(1) []he was the object of collection activity arising from consumer debt, (2) defendant[] [is a] debt collector[] as defined by the FDCPA, and (3) defendant[] ha[s] engaged in an act or omission prohibited by the FDCPA." Som v. Daniels Law Offices, P.C., 573 F.Supp.2d 349, 356 (D. Mass. 2008); see 15 U.S.C. § 1692(a).

The statute defines a "debt collector" as:

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6).  An attorney can qualify as a debt collector under the statute if he "regularly" engages in debt collection, "even when that activity consists of litigation." Heintz v. Jenkins, 514 U.S. 291, 299 (1995).  Courts have interpreted "regularly" to require that debt collection amount

to a substantial percentage of a person's business or a large
volume of collection activity.  See, e.g., Garrett v. Derbes,
110 F.3d 317, 318 (5th Cir. 1997) ("[I]f the volume of a
person's debt collection activity is great enough, it is
irrelevant that these services only amount to a small fraction
of his total business activity; the person still renders them
'regularly.'"); Fox v. Citicorp Credit Servs., Inc., 15 F.3d
1507, 1513 n.5 (9th Cir. 1994) (holding an attorney liable as a
debt collector where at least 80% of his legal fees came from
the collection of debts); Camara v. Fleury, 285 F.Supp.2d 90, 95
(D. Mass. 2003) (holding that an attorney and his law firm were
not debt collectors where 4.57% of the firm's business involved
debt collection activities); Ditty v. CheckRite, Ltd., Inc., 973
F.Supp. 1320, 1336 (D. Utah 1997) (holding an attorney liable
under the FDCPA where debt collection represented one-third to
one-half of the firm's income).

Benson's sole ground for dismissal of the FDCPA claim is
that D'Angola failed to make sufficient factual allegations
concerning Benson's status as a debt collector.  Although
D'Angola alleges few facts that bear on the issue, his complaint
does include a statement attributed to Benson referring to

himself as a debt collector.  Compl. ¶ 22.  Assuming that the
statement is true, a reasonable inference is that Benson was
admitting to regularly engaging in debt collection activities,
such that he would qualify as a debt collector under the FDCPA.
D'Angola's factual allegations on this matter are, therefore,
sufficient to meet the plausibility standards of <u>Iqbal</u> and
<u>Twombly</u>.

D'Angola also asserts two state law claims against Benson,
alleging violations of the New Hampshire Unfair, Deceptive, or
Unreasonable Collection Practices Act, Revised Statutes
Annotated ("RSA") § 358-C, and the Regulation of Business
Practices for Consumer Protection Act, RSA § 358-A.  New
Hampshire defines a "debt collector" more broadly than the
FDCPA, such that a single instance of debt collection activity
can suffice to render a defendant liable for violation of the
Acts.  <u>See</u> N.H. Rev. Stat. Ann. § 358-C:1(VIII)(a).  D'Angola's
allegation that Benson sought to collect the debt in his case
is, therefore, sufficient to state a claim for relief under
state law.

Benson argues in the alternative that dismissal of the
state law claims is warranted because the absolute litigation

7

privilege immunizes from liability any statements he made to D'Angola, because they were made during the course of his representation of Upstate.  He cites no New Hampshire precedent to support his proposition.  Under New Hampshire law, statements made in the course of judicial proceedings, including communications between litigants and attorneys occurring subsequent to the initiation of litigation, are "privileged from liability in civil actions if the statements are pertinent or relevant to the proceedings." Provencher v. Buzzell-Plourde Assocs., 142 N.H. 848, 853-54 (1998); see Pickering v. Frink, 123 N.H. 326, 329 (1983).  "A statement is presumed relevant unless the person allegedly [injured] demonstrates that it was so palpably irrelevant to the subject matter of the controversy that no reasonable [person] can doubt its irrelevancy or impropriety." Provencher, 142 N.H. at 853 (quoting McGranahan v. Dahar, 119 N.H. 758, 766 (1979)) (first alteration in original).

     At this early stage of the litigation, D'Angola has met his burden of demonstrating that Benson's statements were not relevant to the judicial proceeding against Benson's client, Upstate.  See id.  D'Angola alleges that the sole purpose of

8

Benson's phone call was to attempt to collect the debt that
D'Angola owed to Upstate, rather than to discuss settling
D'Angola's claim that Upstate had engaged in unlawful debt
collection activities.  If I credit as true D'Angola's version
of events and draw all reasonable inference in his favor, as I
must do at this stage, the relevant statements did not pertain
to a potential settlement of D'Angola's case against Upstate.
In fact, Benson is alleged to have flatly refused to discuss a
settlement.  Apart from Benson's statements that D'Angola should
not pursue the case because Upstate was closing its offices, the
conversation revolved around Benson's attempt to collect the
debt.  If true, Benson's use of insults and profanities to
pressure D'Angola to pay the debt was so "palpably irrelevant"
to Benson's representation of Upstate in the unlawful debt
collection case that "no reasonable [person] can doubt its
irrelevancy or impropriety."  See Provencher, 142 N.H. at 853.
Therefore, I cannot dismiss D'Angola's state law claims based on
the litigation privilege.[1]

---

[1] In light of my disposition of the motion, I deny Benson's
request for attorney's fees and other costs.

9

IV.   **CONCLUSION**

Benson's motion to dismiss (Doc. No. 6) is denied.  The

parties' motions regarding a surreply memorandum (Doc. No. 15;

Doc. No. 16) are denied as moot.[2]

SO ORDERED.


/s/ Paul Barbadoro_____
Paul Barbadoro
United States District Judge


November 9, 2011.


cc:   Stefano D'Angola, pro se
      Michael A. Benson, pro se

---

[2] D'Angola filed a surreply memorandum without obtaining prior
leave of court, as required by Local Rule 7.1(e)(2).  Benson
moved to strike the surreply (Doc. No. 15).  D'Angola
subsequently filed a late motion for leave to file a surreply
(Doc. No. 16).  Because D'Angola's surreply did not affect my
decision on the motion to dismiss, I deny both motions as moot.